Thomas M. Orr, OSB #88282
Patrick L. Stevens, OSB #98001
HUTCHINSON, COX, COONS,
DuPRIEST, ORR & SHERLOCK, P.C.
777 High Street, Suite 200
Eugene, OR 97401
Phone: (541) 686-9160
Fax:     (541) 343-8693
torr@eugene-law.com
pstevens@eugene-law.com

Of Attorneys for Plaintiff Oregon Community Credit Union

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05  NOV 22  A10 :23

LODGED _____ FILED _____
PAID 256 DOCKETED _____

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>MURRAY DOUGLAS ETHERIDGE,<br>MARCIA LEWIS ETHERIDGE,<br><br>    Debtors.<br>_____<br>OREGON COMMUNITY CREDIT UNION,<br>a state chartered credit union,<br><br>    Plaintiff,<br><br>  vs.<br><br>MURRAY DOUGLAS ETHERIDGE,<br>MARCIA LEWIS ETHERIDGE,<br>TEAM NORTHWEST AUTOMOTIVE,<br>LLC, an Oregon limited liability<br>company, dba TUALATIN VALLEY<br>CHEVROLET, SUNSET AUTOMOTIVE<br>PARTNERS, LLC, an Oregon limited<br>liability company,<br>    Defendants. | **CASE NO: 05-40182-tmb7**<br><br>**ADVERSARY NO:** 05-4040-TMB<br><br>**COMPLAINT TO DETERMINE<br>DISCHARGEABILITY OF DEBT**<br>Pursuant to 11 USC § 523 |

Plaintiff alleges as follows:

1 - COMPLAINT

**Jurisdictional Facts & Parties' Status**

1.

This is a core proceeding over which this court has jurisdiction under 28 USC §157(b). This court has subject matter jurisdiction over the claims alleged herein pursuant to 28 USC § 1334. Venue is proper under 28 USC § 1409 because the bankruptcy case is pending in this district.

2.

Defendants Murray Douglas Etheridge and Marcia Lewis Etheridge (collectively known as "Defendants Etheridge") are the Debtors in this Chapter 7 case.

3.

Defendant Team Northwest Automotive, LLC, is an Oregon limited liability company with its principal place of business located in Washington County, Oregon and doing business as Tualatin Valley Chevrolet (hereinafter referred to as "Defendant Team Northwest"). Defendant Team Northwest is in the automotive retail sales business and is listed under "Other names used by the Debtor" in this Chapter 7 case.

4.

Defendants Etheridge are the only two members and the member managers of Defendant Team Northwest. Defendants Etheridge exercised exclusive control over Defendant Team Northwest.

5.

Defendant Sunset Automotive Partners, LLC, was, and is, an Oregon limited liability company with its principle place of business in Washington County,

2 - COMPLAINT

Oregon ("Defendant Sunset Auto") and also did business under the name of Tualatin Valley Chevrolet under a Management Agreement with Defendant Team Northwest from approximately early January, 2005 through March, 2005. Defendant Sunset Auto is in the automotive retail sales business.

6.

Defendant Marcia Lewis Etheridge, Kerry Chimienti and Richard Clark were the members of Defendant Sunset Auto. Defendant Murray Douglas Etheridge and Defendant Team Northwest continued the operations and ownership of Tualatin Valley Chevrolet in connection with Defendant Sunset Auto during the Management Agreement period from approximately early January, 2005 to March, 2005.

7.

Plaintiff Oregon Community Credit Union, formerly known as U-Lane-O Credit Union, ("Oregon Community") was, and is, an Oregon state chartered community credit union with its principal place of business in Lane County, Oregon. Plaintiff is a Creditor of Defendants Etheridge, Defendant Team Northwest, and Defendant Sunset Auto.

8.

This is an adversary proceeding to determine the dischargeability of a debt owed to Creditor by Defendants Etheridge, Defendant Team Northwest, and Defendant Sunset Auto.

/ / /

/ / /

/ / /

3 - COMPLAINT

9.

On August 25, 2005, Defendants Etheridge filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon. The meeting of creditors was first set for September 27, 2005.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## General Facts

10.

Defendants Etheridge exclusively owned, managed, and controlled Defendant Team Northwest for the primary purpose of doing business as Tualatin Valley Chevrolet and engaging in retail automotive sales in Washington County, Oregon.

11.

Prior to December 7, 2004, Defendant Team Northwest, doing business as Tualatin Valley Chevrolet, became insolvent.

12.

Defendants Etheridge knew, or should have known, that Defendant Team Northwest was insolvent.

13.

On or about December 7, 2004, Defendant Marcia Lewis Etheridge, Chimienti, and Clark formed Defendant Sunset Auto for the specific purpose of purchasing the Tualatin Valley Chevrolet automobile dealership, its assumed business name, assets, and operations from Defendant Team Northwest.

///

///

4 - COMPLAINT

14.

In anticipation of the future sale of the Tualatin Valley Chevrolet dealership, Defendant Sunset Auto and Defendant Team Northwest executed a Management Agreement whereby Defendant Sunset Auto agreed to manage and operate the Tualatin Valley Chevrolet dealership for Defendant Team Northwest beginning in approximately early January, 2005.

15.

Plaintiff reasonably believes, and therefore alleges, that Defendant Sunset Auto partially assumed operations of the Tualatin Valley Chevrolet dealership for Team Northwest on or about January 3, 2005 and that Defendants Etheridge and Defendant Team Northwest also continued in the daily operations of the Tualatin Valley Chevrolet dealership.

16.

Despite the Management Agreement, Defendants Etheridge, as members and managers, testified at their Meeting of Creditors hearing that they personally continued operating Tualatin Valley Chevrolet after January 3, 2005.

17.

In and after early December, 2004, Defendants Etheridge, Defendant Team Northwest and Defendant Sunset Auto operated and controlled the assets and liabilities of the Tualatin Valley Chevrolet dealership and were obligated, both expressly and impliedly, to comply with the terms and conditions of all outstanding contracts, including the Credit Union Direct Lending Agreement signed by Defendant Team Northwest. A true copy of the CUDL Agreement is attached as Exhibit 1 and by this reference incorporated as though fully set forth herein. A

5 - COMPLAINT

second Credit Union Direct Lending Agreement was executed by Defendant Sunset Auto on or about January 3, 2005 and is attached as Exhibit 2 and by this reference incorporated as though fully set forth herein (collectively "CUDL Agreement").

18.

In and after early December, 2004, Defendants Etheridge, Defendant Team Northwest and Defendant Sunset Auto's continued operations of Tualatin Valley Chevrolet including financing retail consumer automobile purchases through retail installment contracts and under the terms and conditions of the CUDL Agreement stated above.

19.

The CUDL Agreement allowed Defendants Etheridge, Defendant Team Northwest and Defendant Sunset Auto, to provide direct loans to potential automobile purchasers based on their status as an Oregon licensed automotive retail dealership. These loans were later assumed by participating lenders such as Plaintiff and included fraudulent loan transactions as set forth below.

20.

Plaintiff was, and is, a participating member in the CUDL program and a third party beneficiary of the CUDL Agreement.

21.

In operating the Tualatin Valley Chevrolet automotive dealership, in and after early December, 2004, Defendants Etheridge individually engaged in fraud and embezzlement of loan proceeds through improper conduct in their exercise of control over Defendant Team Northwest and Defendant Sunset Auto. Defendant

6 - COMPLAINT

Team Northwest and Defendant Sunset Auto are the alter egos of Defendants
Etheridge.

22.

Defendants Etheridge were Defendant Team Northwest's sole members and
managers, and Defendant Marcia Etheridge was a member of Defendant Sunset
Auto and they engaged in improper conduct in exercising their control over
Defendant Team Northwest and Defendant Sunset Auto, while operating as
Tualatin Valley Chevrolet, in the following ways:

    a.    Defendants Etheridge acted in a deceitful manner through
their dealings and misrepresentations to the corporate creditors of Defendant
Team Northwest and Defendant Sunset Auto, doing business as Tualatin
Valley Chevrolet, and deceitful conduct toward the public and consumers
regarding its solvency, payments of obligations, and the fraudulent retail
sale of its automobiles within the State of Oregon;

    b.    Defendants Etheridge commingled personal funds and
improperly withdrew company assets of Defendant Team Northwest and
Defendant Sunset Auto;

    c.    Defendants Etheridge grossly undercapitalized Defendant
Team Northwest and Defendant Sunset Auto through numerous financing
and flooring arrangements, which did not allow enough capital to cover the
reasonably anticipated liabilities and costs associated with the normal
operations of Tualatin Valley Chevrolet;

    d.    Defendants Etheridge milked assets from Defendant Team
Northwest and Defendant Sunset Auto by failing to pay off existing loan

7 - COMPLAINT

balances on vehicles that were traded-in by public consumers or purchased

by Defendant Team Northwest and/or Defendant Sunset Auto in connection

with the execution of retail installment contracts for the purchase of

automobiles from Tualatin Valley Chevrolet. Defendants Etheridge,

Defendant Team Northwest, and Defendant Sunset Auto received funds

from consumers and creditors but failed to pay off existing loan balances on

trade-in vehicles that were the subject of sale, and failed to provide to

Plaintiff legal titles to the vehicles.

23.

As the members and managers of Defendant Team Northwest and

Defendant Sunset Auto, Defendants Etheridge also exercised improper conduct and

committed fraud in operating Defendant Team Northwest and Defendant Sunset

Auto as Tualatin Valley Chevrolet as set forth in the allegations below.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *

(GARD MATTER)

24.

Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

25.

On or about January 16, 2005, Barbara L. Gard executed a Retail Installment

Contract with Defendant Team Northwest and/or Defendant Sunset Auto doing

business as Tualatin Valley Chevrolet, wherein she agreed to purchase a 2003

Chevrolet Trailblazer, VIN: 1GNDT13S132128873, ("Trailblazer") for a cash

purchase price of $25,650.00, and to grant Plaintiff a perfected secured interest in

8 - COMPLAINT

the Trailblazer. A copy of the Retail Installment Contract is attached as Exhibit 3 as though fully set forth herein. ("Gard Contract").

26.

The Gard Contract provided that (1) Plaintiff would be the owner of the Gard Contract, (2) that Plaintiff would provide payment of $25,650.00 to Defendants on behalf of Barbara Gard, (3) that Plaintiff's loan to Barbara Gard included a promise to repay that amount in monthly installments and (4) required Defendants to provide an original Oregon Department of Motor Vehicle Title for the Trailblazer with Plaintiff listed as the registered lienholder.

27.

Pursuant to the CUDL Agreement and the Gard Contract, Plaintiff disbursed $25,650.00 to Defendants doing business as Tualatin Valley Chevrolet on January 25, 2005.

28.

Upon receipt of the funds, Defendants, and all of them individually, failed to deliver, and never delivered, to Plaintiff or the consumer, the Oregon Department of Motor Vehicle Title on the Trailblazer establishing Plaintiff as the registered lienholder on that title as required by the CUDL Agreement and Gard Contract.

29.

Defendants, and all of them individually, breached the terms of the CUDL Agreement and caused Plaintiff to incur debt by false pretense, false representations and actual fraud in that, they knew or should have known:

a.     That pursuant to paragraph 15(a) of the CUDL Agreement, there could not be liens or encumbrances on the vehicles that were the

9 - COMPLAINT

subject of sale, other than the loan purchased by Plaintiff. In this case, the Trailblazer vehicle was already encumbered by a possessory lien in favor of Automotive Finance Corporation at the time of completion of the loan process by Plaintiff, which was never paid by Defendants. The possessory lien was not disclosed to Plaintiff or the consumer Barbara Gard.

      b.      That pursuant to paragraph 15(c) of the CUDL Agreement, Defendants were required to obtain a title certificate showing Barbara Gard as the legal owner and Plaintiff as the lienholder of the Trailblazer vehicle within 20 days of the purchaser taking possession of the vehicle. In this case, Defendants, and each of them individually, failed, and continue to fail, to tender said documents to Plaintiff or to the consumer leaving the vehicle and consumer with no legal title.

30.

Pursuant to Paragraph 20 of the CUDL Agreement, upon a breach of the CUDL Agreement or acts of fraud, Plaintiff may require Defendants to make immediate payment of any indebtedness due to Plaintiff under the CUDL Agreement, including the indebtedness on the Gard Contract.

31.

Pursuant to the terms of the CUDL Agreement and the Gard Contract, Plaintiff made demand, and makes demand, upon Defendants, and each of them individually, for immediate payment of the indebtedness due to Plaintiff under the Gard Contract in the amount of $25,650.00, together with interest, costs and fees and required by the CUDL Agreement.

/ / /

10 - COMPLAINT

32.

Plaintiff performed all of it's obligations under the CUDL Agreement and the Gard Contract by paying Defendants $25,650.00.

33.

Despite demand, Defendants knowingly failed to provide legal title to the vehicle to Barbara Gard and, pay off the existing lien on the vehicle to Automotive Finance Corporation, and knowingly incurred this obligation at a time when they could not meet their financial or contractual obligations to Plaintiff or the consumer.

34.

Plaintiff has been damaged by Defendants' willful and fraudulent conduct in the amount of $25,650.00, together with interest, costs and fees, under the terms of the CUDL agreement and the Gard Contract, which amount should be deemed nondischargeable under 11 USC § 523.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(FOSTER MATTER)

35.

Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

36.

On or about February 5, 2005, Phillip and Constance Foster executed a Retail Installment Contract with Defendant Team Northwest and/or Defendant Sunset Auto, doing business as Tualatin Valley Chevrolet, wherein they agreed to purchase a 2004 Chevrolet Van, VIN: 1GAGG254X41203925, ("Van") for a cash purchase price of $23,890.00, and to allow Plaintiff has a perfected secured interest

11 - COMPLAINT

in the Van.  A copy of the Retail Installment Contract is attached as Exhibit 4 as though fully set forth herein ("Foster Contract").

37.

The Foster Contract provided that (1) Plaintiff would be the owner of the Foster Contract, (2) that Plaintiff would provide payment of $24,790.00 to Defendants on behalf of Phillip and Constance Foster, (3) that Plaintiff's loan to Phillip and Constance Foster included a promise to repay the amount in monthly installments and (4) required Defendants to provide an original Oregon Department of Motor Vehicle Title for the Van with Plaintiff listed as the registered lienholder.

38.

Pursuant to the CUDL Agreement and the Foster Contract, Plaintiff disbursed $24,790.00 to Defendants doing business as Tualatin Valley Chevrolet on March 4, 2005.

39.

Upon receipt of the funds, Defendants, and all of them individually, failed to deliver, and never delivered, to Plaintiff or the consumer, the Oregon Department of Motor Vehicle Title on the Van establishing Plaintiff as the registered lienholder on that title as required by the CUDL Agreement and Foster Contract.

40.

Defendants, and all of them individually, breached the terms of the CUDL Agreement and caused Plaintiff to incur debt by false pretense, false representations and actual fraud, in that, they knew or should have known:

      a.      That pursuant to paragraph 15(a) of the CUDL Agreement,

12 - COMPLAINT

there could be no liens or encumbrances on the vehicles that were the subject of sale other than the loan purchased by Plaintiff. In this case, the Van vehicle was already encumbered by a possessory lien in favor of Automotive Finance Corporation at the time of completion of the loan process by Plaintiff, which was never paid by Defendants. The possessory lien was not disclosed to Plaintiff.

   b.  That pursuant to paragraph 15(c) of the CUDL Agreement, Defendants are required by law to obtain a title certificate showing the Fosters as legal owner and Plaintiff as the lienholder of the Van vehicle within 20 days of the purchaser taking possession of the vehicle. In this case, Defendants failed, and continue to fail, to tender said documents to Plaintiff or the consumer, leaving the vehicle and consumer with no legal title.

41.

Pursuant to Paragraph 20 of the CUDL Agreement, upon a breach of the CUDL Agreement or acts of fraud, Plaintiff may require Defendants to make immediate payment of any indebtedness due to Plaintiff by Defendants under the CUDL Agreement, including the Foster Contract.

42.

Pursuant to the terms of the CUDL Agreement and the Foster Contract, Plaintiff has made demand, and hereby makes demand, upon Defendants, and each of them individually, for immediate payment of the indebtedness due to Plaintiff under the Foster Contract in the amount of $24,790.00.

/ / /

/ / /

13 - COMPLAINT

43.

Plaintiff has performed all of its obligations under the CUDL Agreement and the Foster Contract by paying Defendants $24,790.00.

44.

Despite demand, Defendants knowingly failed to provide legal title to the vehicle to the Fosters, pay off the existing lien to Automotive Finance Corporation, and knowingly incurred this obligation at a time when they could not meet their financial or contractual obligations.

45.

Plaintiff has been damaged by Defendants willful and fraudulent conduct in the amount of $24,790.00, together with interest, costs and fees under the terms of the CUDL Agreement and the Foster Contract, which amount should be deemed nondischargeable under 11 USC § 523.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(LEES MATTER)

46.

Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

47.

On or about February 23, 2005, Deirdre Lees executed a Retail Installment Agreement with Defendants, doing business as Tualatin Valley Chevrolet, wherein she agreed to purchase a 2005 Chevrolet Monte Carlo, VIN: 2G1WW12E159125036, ("Monte Carlo") for a cash purchase price of $27,995.00, and to allow Plaintiff a perfected secured interest in the Monte Carlo. A copy of the Retail Installment Contract is attached as Exhibit 5 as though fully set forth herein ("Lees Contract").

14 - COMPLAINT

48.

The Lees Contract provided that (1) Plaintiff would be the owner of the Lees Contract, (2) that Plaintiff would provide payment of $28,684.00 to Defendants on behalf of Deirdre Lees, (3) that Plaintiff's loan to Deirdre Lees included a promise to repay the amount in monthly installments in exchange for the Lees Contract, and (4) Required Defendants to provide an original Oregon Department of Motor Vehicle Title for the Monte Carlo with Plaintiff listed as the registered lienholder.

49.

Pursuant to the CUDL Agreement and the Lees Contract, Plaintiff disbursed $28,684.00 to Defendants doing business as Tualatin Valley Chevrolet on, or shortly after February 24, 2005.

50.

a.

Deirdre Lees notified Defendants, in a timely manner, that she was rescinding the Lees Contract and would not take possession of the Monte Carlo.

b.

Defendants agreed to rescind the Lees Contract and did not transfer legal ownership of the Monte Carlo to Deirdre Lees or provide Plaintiff with the Monte Carlo's title documentation or register Plaintiff as lienholder on the title documents.

c.

Despite rescission of the Lees Contract, Defendants received the Lees Contract sale proceeds from Plaintiff in the amount of $28,684.00. Defendants, and all of them individually, caused Plaintiff to incur debt by false pretense, false representations and actual fraud, in that they knew or should have known that the

15 - COMPLAINT

loan was rescinded and that they were not legally entitled to the $28,684.00.

d.

Upon receipt of the funds, Defendants, despite demand, failed to deliver to Plaintiff, the Oregon Department of Motor Vehicle Title on the Monte Carlo establishing Plaintiff as the registered lienholder on that title or return the sum of $28,684.00.

51.

Defendants breached the terms of the CUDL Agreement and intentionally exercised dominion or control over the $28,684.00, which seriously interferes with the right of Plaintiff to control it.

52.

Pursuant to Paragraph 20 of the CUDL Agreement, upon a breach of the CUDL Agreement or fraud, Plaintiff may require Defendants to make immediate payment of any indebtedness due to Plaintiff by Defendants under the CUDL Agreement, including the Lees Contract.

53.

Pursuant to the terms of the CUDL Agreement and the Lees Contract, Plaintiff has made demand, and hereby makes demand, upon Defendants, for immediate payment of the indebtedness due to Plaintiff under the Lees Contract in the amount of $28,684.00, together with interest, fees and costs under the CUDL Agreement.

54.

Plaintiff has performed all of its obligations under the CUDL Agreement and the Lees Contract.

16 - COMPLAINT

55.

Plaintiff has been damaged in the amount of $28,684.00, together with interest, fees and costs under the terms of the CUDL agreement and the Lees Contract, which amount should be deemed nondischargeable under 11 USC § 523.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(RENSLOW MATTER)

56.

Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

57.

On or about January 14, 2005, Frank and Lorie Renslow executed a Retail Installment Contract with Defendants, doing business as Tualatin Valley Chevrolet, wherein they agreed to purchase a 2004 Chevrolet Trailblazer VIN: 1GNET16P946216320, ("Blazer") for a cash purchase price of $28,250.00, and to grant Plaintiff a perfected secured interest in the Blazer. A copy of the Retail Installment Contract is attached as Exhibit 6 as though fully set forth herein, ("Renslow Contract").

58.

The Renslow Contract provided that (1) Plaintiff would be the owner of the Renslow Contract, (2) that Plaintiff would provide payment of $27,784.19 to Defendants on behalf of Frank and Lorie Renslow, (3) that Plaintiff's loan to Frank and Lorie Renslow included a promise to repay the amount in monthly installments, and (4) required Defendants to provide an original Oregon Department of Motor Vehicle Title for the Blazer with Plaintiff listed as the registered lienholder.

17 - COMPLAINT

59.

Pursuant to the CUDL Agreement and the Renslow Contract, Plaintiff disbursed $27,784.19.00 to Defendants on or after January 14, 2005.

60.

Upon receipt of the funds, Defendants, and all of them individually, failed to deliver, and never delivered, to Plaintiff or the consumer, the Oregon Department of Motor Vehicle Title on the Blazer establishing Plaintiff as the registered lienholder on that title.

61.

Defendants, and all of them individually, breached the terms of the CUDL Agreement and caused Plaintiff to incur debt by false pretense, false representations, and actual fraud, in that, they knew or should have known:

      a.      That pursuant to paragraph 15(a) of the CUDL Agreement, there should be no liens or encumbrances on the vehicles that were the subject of sale other than the loan purchased by Plaintiff. In this case, the Blazer vehicle was encumbered by a lien in favor of St. Helens Credit Union at the time of completion of the loan process by Plaintiff, which was never paid by Defendants. The lien was not disclosed to Plaintiff or the consumer.

      b.      That pursuant to paragraph 15(c) of the CUDL Agreement, Defendants are required to obtain a title certificate showing the Renslows as the legal owner and Plaintiff as the lienholder of the Blazer vehicle within 20 days of the purchaser taking possession of the vehicle. In this case, Defendants have failed, and continue to fail, to tender said documents to Plaintiff or the consumer.

18 - COMPLAINT

62.

Pursuant to Paragraph 20 of the CUDL Agreement, Plaintiff upon a breach of the CUDL Agreement or acts of fraud may require Defendants to make immediate payment of any indebtedness due to Plaintiff by Defendants under the CUDL Agreement, including the Renslow Contract.

63.

Pursuant to the terms of the CUDL Agreement and the Renslow Contract, Plaintiff has made demand, and hereby makes demand, upon Defendants, and each of them individually, for immediate payment of the indebtedness due to Plaintiff under the Renslow Contract in the amount of $27,784.19, together with interest, fees and costs under the CUDL Agreement.

64.

Plaintiff has performed all of its obligations under the CUDL Agreement and the Renslow Contract by paying Defendants $27,784.19.

65.

Despite demand, Defendants knowingly failed to provide legal title to the vehicle to Frank and Lorie Renslow, pay off the existing lien on the vehicle to St. Helens Credit Union, and knowingly incurred this obligation at a time when they could not meet their financial or contractual obligations to Plaintiff or the consumer.

66.

Plaintiff has been damaged in the amount of $27,784.19, together with interest, fees and costs under the terms of the CUDL agreement and the Renslow Contract, which amount should be deemed nondischargeable under 11 USC § 523.

19 - COMPLAINT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(MEYER MATTER)

67.

Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

68.

On or about December 29, 2004, Joseph L. Meyer executed a Retail Installment Contract with Defendants, doing business as Tualatin Valley Chevrolet, wherein he agreed to purchase a 2002 Oldsmobile Alero, VIN: 1G3NL12E12C209048, ("Alero") for a cash purchase price of $10,590.00, and to grant Plaintiff a perfected secured interest in the Alero. A copy of the Retail Installment Contract is attached as Exhibit 7 as though fully set forth herein. ("Meyer Contract").

69.

The Meyer Contract provided that (1) Plaintiff would be the owner of the Meyer Contract, (2) that Plaintiff would provide payment of $11,620.00 to Defendants on behalf of Joseph Meyer, (3) that Plaintiff's loan to Joseph Meyer included a promise to repay that amount in monthly installments and (4) required Defendants to provide an original Oregon Department of Motor Vehicle Title for the Alero with Plaintiff listed as the registered lienholder.

70.

Pursuant to the CUDL Agreement and the Meyer Contract, Plaintiff disbursed $11,620.00 to Defendants doing business as Tualatin Valley Chevrolet shortly after December 29, 2005.

/ / /

20 - COMPLAINT

71.

Upon receipt of the funds, Defendants, and all of them individually, failed to deliver, and never delivered, to Plaintiff or the consumer, the Oregon Department of Motor Vehicle Title on the Alero establishing Plaintiff as the registered lienholder on that title as required by the CUDL Agreement and Meyer Contract.

72.

Defendants, and all of them individually, breached the terms of the CUDL Agreement and caused Plaintiff to incur debt by false pretense, false representations and actual fraud in that, they knew or should have known:

a.     That pursuant to paragraph 15(a) of the CUDL Agreement, there could not be liens or encumbrances on the vehicles that were the subject of sale other than the loan purchased by Plaintiff.  In this case, the Alero vehicle was already encumbered by a possessory lien in favor of Automotive Finance Corporation at the time of completion of the loan process by Plaintiff.  The possessory lien was not disclosed to Plaintiff or the consumer Joseph Meyer.

b.     That pursuant to paragraph 15(c) of the CUDL Agreement, Defendants are required to obtain a title certificate showing Joseph Meyer as the legal owner and Plaintiff as the lienholder of the Alero vehicle within 20 days of the purchaser taking possession of the vehicle.  In this case, Defendants, and each of them individually, failed, and continue to fail, to tender said documents to Plaintiff or to the consumer leaving the vehicle and consumer with no legal title.

c.     Joseph Meyer further advised the Plaintiff that he no longer

21 - COMPLAINT

had possession of the vehicle and that it had been re-sold to a third party purchaser by Defendants.

73.

Pursuant to Paragraph 20 of the CUDL Agreement, upon a breach of the CUDL Agreement or acts of fraud, Plaintiff may require Defendants, to make immediate payment of any indebtedness due to Plaintiff under the CUDL Agreement, including the indebtedness on the Meyer Contract.

74.

Pursuant to the terms of the CUDL Agreement and the Meyer Contract, Plaintiff made demand, and makes demand, upon Defendants, and each of them individually, for immediate payment of the indebtedness due to Plaintiff under the Meyer Contract in the amount of $11,620.00, together with interest, fees and costs.

75.

Plaintiff performed all of it's obligations under the CUDL Agreement and the Meyer Contract by paying Defendants $11,620.00.

76.

Despite demand, Defendants failed to provide legal title to the vehicle to Joseph Meyer, payoff the existing lien or produce the vehicle, and knowingly incurred this obligation at a time when they could not meet their financial or contractual obligations to Plaintiff or the consumer.

77.

Plaintiff has been damaged in the amount of $11,620.00, together with interest, fees and costs under the terms of the CUDL agreement and the Meyer Contract, which amount should be deemed nondischargeable under 11 USC § 523.

22 - COMPLAINT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CLAIM FOR RELIEF AGAINST DEFENDANTS

(Breach of Contract)

78.

Defendants have continuously and repeatedly failed to perform their obligations to consumers and to Plaintiff under the provisions of the CUDL Agreement and the separate Retail Installment Contracts alleged above and were obtained through false pretenses, false representations and actual fraud.

79.

Defendants, and all of them individually, have failed to pay to Plaintiff the amounts set forth above, which are now due and owing to Plaintiff.

80.

Defendants Etheridge, and both of them, are liable, jointly and severally, for the damages to the Plaintiff as set forth above, because their improper conduct and actual control of Defendant Team Northwest and Defendant Sunset Auto has directly caused the Plaintiff's damages and inability to collect from all Defendants herein. Consequently, the limited liability shield should be pierced and the acts and obligations of Defendant Team Northwest and Defendant Sunset Auto attributed to Defendants Etheridge named herein.

81.

Defendants Etheridge's control of Defendant Team Northwest and Defendant Sunset Auto was actually exercised in a manner causing the Plaintiff to enter into loan transactions as alleged above with Defendant Team Northwest and Defendant Sunset Auto and causing Defendant Team Northwest and Defendant

23 - COMPLAINT

Sunset Auto to default, defraud and convert assets under their obligations in the CUDL Agreement.

82.

Defendants Etheridge's conduct, as member managers or members, was improper, unjust, willful and reprehensible, both in relation to the Plaintiff entering into the above referenced transactions and in interfering with and preventing Defendant Team Northwest's and Defendant Sunset Auto's ability to perform its obligations to the Plaintiff and consumers under the CUDL Agreement. Defendants' conduct was improper in one or more of the following ways.

    a.    Defendants caused Defendant Team Northwest and Defendant Sunset Auto to be grossly undercapitalized by receiving funds on Retail Installment Contracts for the sale of vehicles but failing to provide those funds to the flooring company providing financing and holding title to the vehicles subject to the Retail Installment Agreement.

    b.    Defendants caused Defendant Team Northwest and Defendant Sunset Auto to make payments to Defendants Etheridge and other insiders, while failing to pay the necessary operating expenses and legal obligations owed by Defendant Team Northwest and Defendant Sunset Auto to, among others, Plaintiff under the CUDL agreement and loans described above.

    c.    Such payments had the effect of Defendants "milking" or extracting excessive payments from Defendant Team Northwest and Defendant Sunset Auto, at a time when said Defendant Team Northwest and Defendant Sunset Auto, could not afford to make those payments due to on-going legal obligations and debts owed to creditors. This milking reduced

24 - COMPLAINT

the amount of assets available to Defendant Team Northwest and Defendant Sunset Auto to satisfy liabilities it owed to creditors, including the Plaintiff under the CUDL Agreement and the above-described loans.

83.

Defendant's improper conduct, as set forth above, was a significant factor in causing Defendant Team Northwest's and Defendant Sunset Auto's inability to satisfy their debts to Plaintiff under the CUDL Agreement, and in interfering with Defendant Team Northwest's and Defendant Sunset Auto's ability to perform its obligations under the CUDL Agreement with Plaintiff or its obligations to the public and consumers.

84.

Defendants' control and manipulation of Defendant Team Northwest's and Defendant Sunset Auto's financial structure severely prejudiced Plaintiff's rights and resulted in the perpetration of a fraud and injustice upon Plaintiff and upon the consumers and public.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SECOND CLAIM FOR RELIEF

(Conversion – 11 USC § 523 (a) (5))

85.

Plaintiff realleges and incorporates by reference the preceding paragraphs.

86.

Defendants, and each of them individually, agreed to immediately pay Plaintiff the amount of the indebtedness owed to Plaintiff as alleged above and

provide legal title and security documentation on vehicles sold by Defendants to Plaintiff and consumers in exchange for receiving the sale proceeds set out above.

87.

All Defendants herein, and each of them individually, intentionally exercised dominion or control over the monies paid by Plaintiff to Defendants as set forth above, which so seriously interfered with the right of Plaintiff to control it, as to amount to willful injury by the Defendants to another's property as is prohibited by 11 USC § 523(a)(6).

88.

As a result of Defendants willful actions as alleged above, Plaintiff's right, under the Retail Installment Contract, to the funds (property) described above, have been converted.

89.

As a result of Defendants actions as alleged above, Plaintiff has sustained damages as set out in the above loan transactions involving Gard, Foster, Lees, Renslow, and Meyer, which amount should be deemed non-dischargeable under 11 USC § 523 (a)(6).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIRD CLAIM FOR RELIEF

(Fraud – 11 USC § 523(a)(2))

90.

Plaintiff realleges and incorporates by reference the preceding paragraphs.

/ / /

/ / /

26 - COMPLAINT

91.

Defendants incurred debts to Plaintiff as alleged above knowing that Defendant Team Northwest and Defendant Sunset Auto were unable to fulfill their obligations to pay those debts under said CUDL Agreement and Retail Installment Contracts, and knowing that they did not intend to perform their obligations under the Retail Installment Contract with consumers, including the payoff of existing balances on trade-in vehicles or the transfer of legal title to consumers or Plaintiff.

92.

Plaintiff, pursuant to the CUDL Agreement and Retail Installment Contracts set forth above, relied upon Defendants' representations that the Defendants would perform consistent with the CUDL Agreement, by providing the title to vehicles purchased by consumers and financed by Plaintiff and paying off consumer loans on the trade-in vehicles.

93.

Defendants' representations were false. Defendants, in fact, received and thereafter withdrew money and incurred debts to which they knew they were not entitled, as alleged above. The debts owing from Defendants to Plaintiff were incurred by false pretenses, false representation and actual fraud in that the Defendant knew, or reasonably should have known, that they (1) were financially unable to pay Plaintiff the sums advanced by Plaintiff pursuant to the CUDL Agreement, (2) unable to pay off the consumer loans on vehicles taken in on trade, and (3) unable to provide the legal title to vehicles purchased by consumers and financed by Plaintiff.

///

27 - COMPLAINT

94.

Plaintiff had the right to rely upon Defendant's representation.

95.

As a result of Defendants' action as alleged above, Plaintiff has been damaged due to fraud in the above loan transactions involving Gard, Foster, Lees, Renslow, and Meyer, which amounts should be nondischargeable under 11 USC § 523.

WHEREFORE, Plaintiff prays for a judgment of this court as follows:

1.     In favor of Plaintiff for the amounts set forth in the above loan transactions involving Gard, Foster, Lees, Renslow, and Meyer, plus interest, costs and fees;

2.     That the Court determine that the Plaintiff's judgment against Defendant for said amounts and for Plaintiff's costs and disbursements incurred herein be nondischargeable; and

3.     That Plaintiff have such other and further relief as is just and equitable.

DATED this __21__ day of November, 2005.

HUTCHINSON, COX, COONS,
DUPRIEST, ORR & SHERLOCK, P.C.

By:_____
Thomas M. Orr, OSB #88282
Patrick L. Stevens, OSB #98001
    Of Attorneys for Plaintiff